IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TREY A. MONSOUR, | § § | |
| Plaintiff, | § § | Civ. Action No. 4:21-cv-01046 |
| vs. | § § | |
| POLSINELLI PC, | § § § | |
| Defendant. | § § | |

### DEFENDANT'S RULE 12(b)(3) MOTION TO DISMISS, MOTION TO COMPEL ARBITRATION, AND MOTION FOR ATTORNEYS' FEES

Trey Monsour ("Monsour") ignored the binding arbitration provision in his Employment Agreement when he filed this lawsuit. Monsour apparently preferred to attract media attention with salacious and untrue statements about his employment. Monsour, however, conveniently failed to mention even one word about the numerous problems he caused at Polsinelli PC. For example, Monsour failed to include anything regarding the blatant misrepresentations he made to the Firm or his mistreatment of female colleagues. Monsour knows that neither sexual orientation nor age played any role in the Firm's decision to terminate his employment.

The arbitration provision in the Employment Agreement Monsour signed with Polsinelli PC ("Polsinelli" or the "Firm") covers all claims arising from the employment relationship between the parties, including all claims in this action. Consistent with the parties' agreement, this Court should dismiss Plaintiff's claims, order Plaintiff to arbitration, and award Polsinelli its attorneys' fees for having to bring this Motion.

- 1 -

77737722.1

## I.  NATURE AND STAGE OF PROCEEDINGS

Monsour sued Polsinelli on March 30, 2021, in the Southern District of Texas, Houston Division, alleging his employment was terminated because of his age and sexual orientation, he was subjected to a hostile work environment because he allegedly did not receive sufficient support staff, and he was fraudulently induced to join the firm. Polsinelli vigorously denies all of Monsour's allegations.

## II.  FACTUAL BACKGROUND

### A.  Employment with Polsinelli.

Polsinelli hired Monsour as an equity shareholder effective June 19, 2017, when he was both gay and 54 years old. Polsinelli placed Monsour in an equity shareholder position based on his representation that he would bring with him a book of business valued between $1,200,000 to $2,300,000. It became evident, however, that Monsour patently misrepresented the size of his portable book of business. Monsour originated less than $135,000 in fiscal year 2018, which resulted in Monsour's move to an income shareholder position. In fiscal year 2019, Monsour originated less than $300,000.

Monsour caused a number of problems during his employment, including issues based on his performance and collections. For example, the Firm had to write off nearly 40% of Monsour's time (over $150,000) on a matter in fiscal years 2019-2020, and 58% of time (over $300,000) across his book of business in fiscal year 2020. While any one of these multitude of problems would have justified termination of Monsour's employment at any time, it was Monsour's poor treatment of two female colleagues that tipped the scale on the Firm's decision to part ways. The Firm removed a second year female associate from Monsour's matters, at her request, based on Monsour's mistreatment of her, only to later learn Monsour directed the same type of bad behavior

at a female shareholder. The Firm ultimately decided to terminate Monsour's employment.

### B. Arbitration Agreement.

Monsour and Polsinelli signed an Employment Agreement when Monsour was hired by Polsinelli. The Agreement contained a binding arbitration clause that provided:

> Any dispute pertaining to the provisions of this Agreement, any stock redemption agreement between Employee and Employer or any other agreement between the Employer and Employee, or any dispute arising out of or pertaining to the business, professional relationship or employment relationship between the Employer and Employee (collectively, "**Disputes**") shall be resolved exclusively … by a single arbitrator … selected in accordance with the then current National Rules for Resolution of Employment Disputes established by the American Arbitration Association.[1]

The scope of the agreement is broad; it covers all claims related to business, professional, or employment relationship between Monsour and Polsinelli and any disputes about the terms of the Employment Agreement itself. The agreement to arbitrate is mutual—both Monsour and Polsinelli agreed to bind themselves to resolve ***all*** "Disputes" exclusively through arbitration.[2] The Firm does not take its agreement with Monsour lightly and seeks to enforce its terms including the obligation to arbitrate Monsour's claims and any potential counterclaims by Polsinelli.

### III. ISSUE TO BE RULED UPON AND STANDARD OF REVIEW

**Issue:** Should the Court compel arbitration pursuant to the Federal Arbitration Act ("FAA") and dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3) based on improper venue because the express terms of the underlying contract require any claim or dispute arising from Plaintiff's employment to be resolved through arbitration?

**Standard of Review:** The FAA governs the arbitration agreement between Monsour and Polsinelli, as the Act applies to contracts involving commerce "absent clear and unambiguous

---

[1] Exhibit 1, ¶¶ 19, 19(b) (emphasis in original). Monsour completely ignored the requirement that he engage in pre-dispute mediation. Exhibit 1, ¶ 19(a).

[2] Exhibit 1, ¶ 19.

contractual language to the contrary."[3] *Action Indus., Inc. v. U.S. Fid. & Guar. Co.,* 358 F.3d 337, 340-43 (5th Cir. 2004) (*citing Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 59 (1995). Indeed, the Act applies to agreements to arbitrate disputes merely "evidencing a transaction involving commerce" and does not require a substantial effect on interstate commerce;[4] it requires only that commerce be involved or affected. See 9 U.S.C. § 2; *Allied-Bruce Terminix Cs. v. Dobson*, 513 U.S. 265, 280-81 (1995). The FAA, of course, covers employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123-24 (2001). When one party fails or refuses to arbitrate under a written agreement for arbitration, the FAA allows the aggrieved party to move the court for an order compelling arbitration pursuant to the relevant agreement. 9 U.S.C. § 4.

To order the parties to arbitration, the court must first determine if there is a valid agreement to arbitrate between the parties. *Id*. If the court determines a valid agreement to arbitrate exists between the parties, the court must determine whether the agreement delegates the determination of the scope of arbitrability to the arbitrator. Such delegation may occur expressly or by incorporating the American Arbitration Association ("AAA") Rules into the arbitration agreement. *See, e.g., Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,* 687 F.3d 671, 675 (5th Cir. 2012). As the Fifth Circuit has noted:

> [T]he only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If

---

[3] Exhibit 1, ¶ 19. Even though the parties agreed their Employment Agreement would be interpreted under Missouri law, arbitration provisions in employment agreements that involve interstate commerce are governed by the FAA, not the Missouri Uniform Arbitration Act (MUAA). *See State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. Banc 2015). Regardless, the MUAA was "fashioned after the Federal Arbitration Act" and "[t]he **FAA** and **Missouri's Arbitration Act** are substantially similar.). *See Hewitt,* 461 S.W.3d at 805 n.4 (quoting *CPK/Kupper Parker Commc'ns, Inc. v. HGL/L. Gail Hart,* 51 S.W.3d 881, 883 (Mo.App.2001).).

[4] Exhibit 1, ¶ 19. Monsour is a resident of Texas. Polsinelli is a citizen of Missouri. *Plaintiff's Complaint,* ¶¶ 13 & 14. Polsinelli does business across the United States. Monsour regularly practices law in various federal courts in and outside of Texas. Thus, the parties' agreement undoubtedly involves interstate commerce.

- 4 -

there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (internal citation omitted).

If the agreement delegates the arbitrability decision to the arbitrator, the court's analysis ends; the court compels arbitration and dismisses the pending litigation under Rule 12(b)(3). *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005).

## IV. ARBITRATION IS REQUIRED

### A. There is a Valid Arbitration Agreement.

Polsinelli and Monsour have a valid employment agreement, and that employment agreement contains a valid arbitration agreement and delegation clause, based on Missouri law.[5] *Soars v. Easter Seals Midwest,* 563 S.W.3d 111, 114 (Mo. Banc. 2018) *abrogated on other grounds in Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 437 (Mo. Banc. 2020). The essential elements of any contract, including one for arbitration, are "offer, acceptance, and bargained for consideration." *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. Banc 1988). All of these elements are met. Monsour's Employment Agreement contained and incorporated by reference the terms of Polsinelli's offer of employment. Monsour accepted those terms when he signed the Agreement. The Agreement is also supported by consideration, including Monsour's initial hiring,[6] salary compensation derived from Monsour's Projected Compensation,

---

[5] Exhibit 1, ¶16.

[6] *See Soars* at n. 3 ("this Court has never decided whether initial at-will employment is consideration for an arbitration agreement…The difference in [the] consideration analysis between an offer of continued employment at-will and an offer of initial at-will employment is paramount…before the employee [is] hired, an employer-employee relationship [does] not exist. At the point of hiring, the employer confers the benefit of employment upon the employee, and it is axiomatic that with the benefit of employment comes a bundle of legal rights and expectations to which the employee was not entitled prior to the handshake."). Here, Monsour was better positioned than an at-will employee in his relationship with Polsinelli. Monsour's relationship with the Firm was governed by the terms of his Employment Agreement and, for example, a termination for any reason other than with cause afforded him certain additional rights. Under the logic of the dicta in *Soars*, Monsour's hiring as an employee subject to an Employment Agreement is

a signing bonus, opportunity for year end and merit bonuses, stock in the Firm, benefits, Monsour's status as a shareholder, payment of bar dues and legal associations by the Firm on Monsour's behalf, the inclusion of standards for "cause" terminations, and payment for a without cause termination.  Moreover, the Employment Agreement, containing the Arbitration Agreement, was required to be signed as a condition of Monsour's employment and contains a mutual commitment to arbitrate any disputes between Monsour and the Firm.  Monsour signed his Employment Agreement by hand, and it was attested to by two Polsinelli employees.[7]

### B.     The Parties Delegated Arbitrability to the Arbitrator.

The Arbitration Agreement between Polsinelli and Monsour expressly incorporates the AAA's Employment Rules, which state, the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope, or validity of the arbitration agreement."[8] *See e.g., Kubala*, 830 F.3d at 201. The Fifth and Eighth Circuits have held that "express adoption" of the AAA Rules in an arbitration agreement constitutes "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *see also Fallo v. High-Tech Inst.,* 559 F.3d 874, 878 (8th Cir. 2009) (holding that an arbitration agreement's incorporation of the AAA Rules supersedes Missouri law regarding the question of arbitrability relying on *Preston v. Ferrer,* 552 U.S. 346 (2008)). Because the parties in this matter expressly incorporated and required application of the AAA's Employment Rules, as in *Petrofac*, the Court's analysis stops, leaving arbitrability to be determined by the arbitrator.

---

sufficient consideration for an arbitration agreement.  Nevertheless, as is noted herein, the arbitration agreement is further supported by mutuality—both parties must resolve all disputes through binding arbitration.
[7] Exhibit 1, p. 8.
[8] Exhibit 1, ¶ 19(b); *see also* EmploymentRules_Web_2.pdf (adr.org) (*See* Rule 6(a)).

## V.    DISMISSAL IS APPROPRIATE

When all of the claims alleged in a complaint are subject to arbitration, dismissal of the litigation under Federal Rule of Civil Procedures 12(b)(3), as opposed to a stay of litigation, is the proper remedy. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Lim*, 404 F.3d at 902. Here, there is a valid agreement to arbitrate all claims between Monsour and Polsinelli. There is also a dispute between the parties concerning Polsinelli and Monsour's employment relationship, a topic included in the arbitration provision in their Agreement. This Court accordingly should dismiss this matter and order arbitration.[9] The arbitrator will then decide arbitrability to the extent there is any dispute regarding that issue.

## VI.    MOTION FOR ATTORNEYS' FEES

Polsinelli seeks an award of its attorneys' fees incurred to bring this motion to dismiss and to compel arbitration. The parties' Agreement states that if either party "files an action in any court of law and it is later determined that the subject matter of such action was covered by and subject to this agreement to arbitrate, the filing party shall be responsible for any legal fees incurred by the other in connection with such court action."[10] Monsour disregarded his obligations under the Employment Agreement: he failed to engage in a pre-dispute mediation and filed this lawsuit in federal court instead of pursuing arbitration. Accordingly, an award of fees is appropriate. Polsinelli has incurred attorneys' fees in bringing this Motion and will provide an affidavit of counsel to support a fee award upon the Court's ruling granting Defendant's Motion.

## PRAYER

Defendant Polsinelli respectfully requests the Court grant its Motion to Dismiss and to

---

[9] Polsinelli is amenable to arbitration in Harris County, Texas, where Monsour was primarily employed.
[10] Exhibit 1, ¶ 19(e).

- 7 -

Compel Arbitration, order the parties to arbitration in Harris County, Texas, dismiss Monsour's Complaint, award Polsinelli its attorneys' fees and costs as a result of Monsour's violation of the Agreement, and grant such other and further relief to which Polsinelli may be justly entitled.

                                                    Respectfully submitted,

*/s/ Laura E. De Santos*
**Laura E. De Santos – Lead Counsel**
State Bar No. 00739612
ldesantos@grsm.com
Megan M. Mitchell
State Bar No. 24073504
mmmitchell@grsm.com
Gordon Rees Scully Mansukhani LLP
1900 West Loop South, Suite 1000
Houston, TX 77027
(713) 961-3366 (Telephone)
(713) 961-3938 (Facsimile)


Mercedes Colwin, Esq.*
mcolwin@grsm.com
1 Battery Park Plaza, 28th Floor
New York, NY 10004
(212) 269-5500 (Phone)
(212) 269-5505 (Fax)

***Pro Hac Vice Pending***


**ATTORNEYS FOR DEFENDANT POLSINELLI PC**

- 9 -

## CERTIFICATE OF SERVICE

      I hereby certify that on April 27, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

William A. Brewer III
Robert M. Millimet
Williams A. Brewer IV
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: 214-653-4000
Facsimile: 214-653-1015

                                                   /s/ *Laura E. De Santos*
                                                   Laura E. De Santos

77737722.1